Your Honor, may it please the Court, Adela Lillari for the appellant, Mr. Harris. I would like to reserve two minutes for rebuttal, if possible. Your Honor, Mr. Harris is a devout Buddhist, but the California Department of Corrections fails to provide a Buddhist-compliant diet in violation of this Court's precedent. Mr. Harris thus had to resort to second-rate measures to accommodate his religion by enrolling in the Religious Meat Alternative Program, or RMAP, the prison's halal diet. But after 16 years in this program, the prison expelled Mr. Harris for buying non-halal food items from the canteen, even though these were necessary for his health. The decision below should be reversed for two reasons. First, the prison substantially burdened Mr. Harris's religious exercise by both failing to provide him with a Buddhist diet and then also kicking him off the prison diet that is the most consistent with his religion. And second, appellees do not advance any compelling government interest to justify this expulsion. Can I ask a preliminary question about jurisdiction? Yes, Your Honor. Because as I dug through the record, and this is not a fault of your client, I mean, your client was told, Richie's responsible for this. He amended the complaint and added Richie. Now they're, and I want to hear from the other side, now they're saying, well, Richie doesn't have anything to do with it and can't provide relief. I'm afraid that might be true. And if that's true, should we just remand the, I mean, first of all, I want to hear whether you think relief is available here. If it's not, should we just remand this for a chance to amend the complaint? Your Honor, I think Mr. Richie is a proper defendant. He is part of the religious oversight unit in Sacramento. Well, but as I understand it, Richie is only responsible, well, I don't know if I should say only, but he's responsible for sort of tracking noncompliant orders. Correct. And also letting the prison know when those orders, when they're noncompliant. Right. But as I read through this, it seems like that is a relevant inquiry. I mean, I think there's some problems with what has happened here on the merits, but even if you get into the problems on the merits, I don't, I mean, at most you can enjoin him from telling the prison, you know, when he was noncompliant, but that doesn't seem to be the relief you're asking. You're asking for a, for him to be placed back on the program. Correct. So we're asking to be placed back on to create like a formal exemption for him so that he can stay in the RMAP diet without being, you know, violated. But Richie can't do that. I think so. I think he might be since he is in the religious oversight program that, you know, like that, that's responsible for administrating these religious diets. And so if he had a formal, like a, you know, a formal. Could he recommend that he be placed back on the RMAP? Exactly. He could be, he could ask that he, and he is, again, higher up than all the prison officials that they ask us to, to ask Mr. Harris to sue. So I think that there is proper relief here. And if there isn't, I agree with you that at the very least there should be a remand to allow Mr. Harris to amend his complaint, to add the new defendants that they now want us to put on, even though in an initial, in responding to the first preliminary injunction, they said and they represented to Mr. Harris, who was pro se, that Mr. Richie was a proper defendant. So going back to the, the two sort of reasons for why Mr. why the district court should be reversed, first, the prison substantially burdened Mr. Harris's religious exercise, and then again, second, appellees do not advance any compelling government interest. Um, on the first point, Your Honor, Mr. Harris has sufficiently demonstrated a substantial burden. Meanwhile, uh, because, and the substantial burden here is obvious. Mr. Harris is not provided with a Buddhist compliant diet. No one disputes that, not, uh, not appellees. And the Ninth Circuit. But you're not, the interesting thing about this is you're not asking, you're not asking them to provide a Buddhist compliant diet per se. You're saying you want the closest thing that they offer, uh, to a Buddhist compliant diet, as I understand it. Correct. Um, and, and then he's not compliant. I mean, are you, does the prison have an ability to take them off based on noncompliance? Take prisoners off of their diet based on noncompliance? Depending on the prisoner, if a prisoner is Muslim, for example, and is, feels obligated to comply with halal rules all the time, I think that's a sufficient reason to kick him off. Here, they offered Mr. Harris, the prison official did, the ARMAP diet as a religious accommodation. It was Carol Hyman who told him that you should join the ARMAP diet because it is, quote, the closest to your spiritual needs. Mr. Harris did that. But, of course, Mr. Harris is not Muslim. He does not feel compelled to follow all the halal rules all the time. And he shouldn't be punished for that. And even most religions have sinners and backsliders. And all religious diets have a hardship exception. If, for example, you're facing health issues, which Mr. Harris was on multiple occasions, and he was trying to find the cheapest way for himself to get food because he was feeling faint, he was feeling dizzy, and he's pre-diabetic and has these conditions. So your point, I guess, would be that the prison could, could take any prisoner off for noncompliance, but it's got to be an individualized inquiry. And that individualized inquiry didn't happen here.  And would you say that that's essentially a question of sincerity? Yes, I think that would be a question of sincerity. But, of course, appellees do not challenge Mr. Harris's sincere religious beliefs here. And the district court, their argumentation, I think, went to sincerity. And if Mr. Harris is required by law to be given a Buddhist diet, I think the greater includes the lesser in this case. He should, at the very least, be in a diet that is the most consistent. I think that's administratively feasible. Given, I mean, the government's arguments, and I'll be interested to hear what counsel has to say on that, but they seem to be holding Mr. Harris's willingness to compromise against him here. Correct. And if we were to remand, the case is still pending in the district court, right? And given the arguments that have been made on appeal, would it be appropriate to pursue in the district court at this point the broader relief of saying, let's just go with a straight Buddhist diet? I think it would be appropriate to do that, Your Honor. Mr. Harris did not ask for that relief specifically, so I would leave it up to him at the district court. That would be a natural response to the arguments being made by the state. Correct. I think so. Can I ask you about the slippery slope problem here? Yes. Which is fairly familiar, but the arguments you're making lead toward a religious right for an individually tailored diet. And this can draw sarcastic comments like the Church of the Steak and Lobster Dinner, where somebody claims a religious right of that sort. What comfort can you give us about that? I think two things that the prison can do. First, they can challenge the sincerity of that person's religious diet. If what they're asking for is, you know, lobster and steak, you might question, well, is that a religious and a sincere religious motivation? And second, you can advance a compelling government interest to say that the prison cannot afford to be able to provide a tailored diet of this kind. Of course, they have not done that. And here, I think the cost is minimal for the prison. It is the RMAP diet as an administrative apparatus already exists. It's one extra diet provided to one extra prisoner that they did for 16 years without any, you know, administrative chaos. Can I ask you just to help straighten me out on the record? In the appellee's brief at page 24, they say there's no evidence that the RMAP diet is the closest that he can get to a proper Buddhist diet. What's the actual evidence you're relying on in the record to that effect? Is it his affidavit or? What they, sorry, would you mind repeating that question? Well, I'll try. But what's the evidence in the record showing that the RMAP diet is the closest available to what he believes his religion calls for? Yes, I believe if you look at FER 26, he has declarations describing that he wants a clean diet or and he uses like clean meat. GMO free meat is one option, but he defines it much more broadly. And also, he was also told by the rabbi that this was going to be the closest, right?  The rabbi. Yeah. Carol Hyman said it's closest to his spiritual needs.  Okay. Okay. We'll give you time for rebuttal. Thank you. Thank you so much. Good morning, Your Honors. It may please the court. My name is Gurpreet Sandhu, and I represent the appellees in this case. I want to start by refocusing on why we're here today. We're not here because Mr. Harris asked the prison for a uniquely tailored GMO free diet. We're here because he asked for three specific things. One, to stop retaliation. Two, to be reintroduced into the RMA program. And third, to stop the prison from issuing any violations for all his non-halal purchases, regardless of whether they're needed for his health or for his religion. Well, and I think that may go to my standing argument because Richie, my standing questions. I mean, I don't really know how, but unfortunately, we kind of have a duty to look at this. We have a duty to look at this, and I'm just trying to sort through it because Richie here's the problem. Is that why you said Richie is the one that was responsible for this? You did say that the state said that, right?  So in terms of jurisdiction in footnote eight, we have conceded that this court has jurisdiction over the defendants, but we do agree that technically defendant Richie wasn't the one who provided the violations. And why do you think we have jurisdiction? Because as you know, we have an independent duty to determine our own jurisdiction. You think Richie provides that jurisdiction? Because basically you said there was no jurisdiction until they amended and added Richie. Yes. So two things. Mr. Richie has more of a managerial role. So he would be in charge of determining whether there would be violations. Can he determine whether he is taken off of the halal diet? Uh, he could determine the rules, but not necessarily the individual violation of Mr.  But in this case, I don't think we even need to go to jurisdiction because we can affirm based on the merits themselves. Well, I think you got a problem. Yeah, go ahead. That's upside down. We need to deal with jurisdiction. But you told the district court and the plaintiff that Richie is able to provide the relief he seeks, correct? Not quite. He would be in charge of setting the rules, but he wouldn't be in charge of determining Mr. Harris's violations. The case is going to be proceeding in the district court. And if I were the plaintiff's lawyer, I would add every defendant in sight, any potential official in sight, given the arguments that have been made and the issues that have been who have actual knowledge of the injunction, is there really any practical problem if an injunction were to run against Mr. Richie and those who work with him? Well, let me put it this way. Mr. Richie wouldn't be able to stop any violation from being issued against specifically Mr. Harris. He would be in charge of setting the rules, but is not making that individualized inquiry. And Mr. Harris, if he ever wanted to go back to the RMA, he is free to apply again. The rules do not prevent him from reapplying, but he would have to follow the rules of the RMA program. But the key focus here... Well, but that seems to be a problem. I mean, the problem with that is he... I assume if he reapplied, you'd say, well, no, because you didn't adhere to it. He is free to reapply even if he, as in this case, has violated the RMA rules by having two violations in the last six months. But the rules do permit... And if he violates it again, he'll be kicked off again. Only if, according to the policy, he violates it within six months. Why don't you get to the merits then? Yes. So according to the... The focus here is whether there was substantial harm on Mr. Harris. Mr. Harris has not shown that there was, simply because his religious beliefs, as he states them, would not be violated regardless of whether he's in the program or not. He states that he can eat pork. In his own words, he stated that the method of slaughtering of halal is irrelevant. And I quote, he said, the only substantial difference between a halal food product and a non-halal food product is its Islamic label. What this means is... This is... And this came from the state as well, or from the prison as well, the chaplain, that this was the most consistent with his religious beliefs. Yes. Two points in response. The statement that Mr. Harris makes in his reply technically is not evidence. But even if we consider that, Mr. Harris is allowed to have inconsistent beliefs. But what the court is allowed and required to do here is to determine whether there was objective substantial burden. And based on his statements, his behavior, the fact that he purchased over 25 non-halal products, and that he even said that they are not condoned by his religion, he should... But you're not challenging the sincerity of his beliefs, right? We are not. And we do not... So if he sincerely believes that the halal food is the closest diet to his religious beliefs, and you don't challenge that, how is that not a burden on his beliefs? It is not because we don't need to challenge the sincerity of his beliefs. He has stated that the halal diet is the closest, but he has also stated that the single distinguishing feature of that diet is irrelevant to him. And in fact, he has asked multiple times to purchase non-halal products, which are a staple to his religion. So being outside of the program... So that sounds like a consincerity question then. No, because he can be sincere as to both, and we do not question that. The district court has not questioned or interpreted his statements. We're taking... Well, I think that's what I'm concerned about, to be honest with you, is I think the district court sort of has. The district court kind of adopted these same arguments and said, well, the fact that you bought this non-halal product means this must not be primary to your religion. And boy, I'm not sure what the difference is between that and just saying, I don't believe that you actually believe what you say you believe. What I would say is that the district court hasn't interpreted his beliefs. We're not here to determine what is central, what isn't to his religion. We're here to look objectively at his own statements. He said that the slaughtering process... Boy, that gets really dangerous to me, to start parsing out a person's statements about their religious beliefs into a deposition and taking out and saying, well, you've complied or you haven't complied. I mean, it seems like there's a zone of protection for a believer to have his beliefs. He may not have it fully formalized. I mean, he may not have thought through, well, does pork rinds fit on this side of the ledger or not? Once a month, is it okay? Is it not? I just don't think that the courts are into policing that in that way. It'll turn us into the Pharisees, right? Yeah, so I would say two things in response. First, if Mr. Harris accepted that the halal diet was the closest thing, and that's fine. If we take that in isolation, he was given the RMA. And even now, he can still apply to the RMA. However, we're not parsing out any of his statements. We're looking at the weight of the totality of the circumstances. The friend from the other side, in his briefs, has asked the court to look at his beliefs in the totality of the circumstances in a holistic way. And that's exactly what we're doing here. We're looking at what he purchased. We're looking at his statement. And in Mr. Harris's own words, a halal diet means two things. One, that you cannot eat pork. And two, that you have to eat meat that is certified as halal. Both of these factors, Mr. Harris has clarified in his own words that he can eat pork. And it is irrelevant to whether he eats meat that is slaughtered in the halal way. It is not possible for someone to be burdened by not having something that you explicitly say you do not need. And the RMA has, as its only feature, the fact that it is halal. There is nothing else that makes the RMA diet special or different. Can I ask, what are the costs here? Is this just the efficiency of running the program? Or is there actually a cost if he goes back on it? I would say there are two costs. There is the economical aspect, which is having to provide a halal diet to an inmate who explicitly said he does not need it. And then there's also the compelling... I don't think he said he doesn't need it. He said it's the closest thing that's provided. Well, he's also stating that he requires to buy non-halal products which are not condoned, which are required for his health, even though there's nothing in the record demonstrating that. You were going to give a second reason. Yes. And the second reason is the compelling interest of prison to maintain order, discipline, and security in its institutions. And it cannot do that if its rules and standardized diets are violated without any justification. Why isn't the answer to that to demand a Buddhist diet available for Buddhists? Yes, Your Honor. If Mr. Harris would like to do that, he is free to do so, and we will discuss it again. But based on the record, we cannot discuss that today because the prison would have to come up with a completely different record to understand what is GMO, what isn't. Even based on the record today, we're not clear as to what Mr. Harris means because he purchased many non-GMO products. And that is in Exhibit H. Well, you – yeah. But the problem I'm having with that argument is that you seem to be holding his willingness to compromise and reach a middle ground against him. No, Your Honor. We are free and happy to work with Mr. Harris. And just like any other grievance, if a prisoner asked for a specialized diet, it will be assessed and what can be done. Here, this happened in 2010 where he accepted to the RMA diet, and he signed an agreement which states that you will follow the rules of that diet. He then violated the one and only rules which make the RMA an RMA, and he has been kicked off. And now his options are to remain in a standardized diet, which will allow him to purchase all the products which he insists that he wants, such as the ramen and the sausages, or reapply to the RMA diet to which the record has shown it does not negatively – There's a third option. Sue and say that you're violating his religious liberties. But we'll have to decide that one. Yes. Okay. Thank you. Thank you, Your Honor. Thank you, Your Honor. I guess I'll begin with two quick points. The first is on standing. Appellees say that Mr. Ritchie has a managerial role as part of the Religious Oversight Committee in Sacramento. He has the ability to direct the Religious Review Committee in Corcoran State Prison to let Mr. Harris back in the program and disregard his violations, even if they issue them, to not use that as a basis to kick him out. And so I think there is relief that Mr. Harris can seek in this lawsuit. And second, all of Appellee's arguments go to sincerity, but they've never specifically challenged sincerity. In fact, he had to be vetted when he applied for the RMAP program originally. Carol Hyman told him to apply to the RMAP program. I think Mr. Harris's consistent practice of being on this RMAP diet for the last 16 years and this lawsuit is evidence of his sincerity. Mr. Harris is a sincerely Buddhist – yeah, Buddhist who believes that the RMAP diet – I know. We'll give you a little bit of time if you need it, because I know – but what happened – I mean, is this a new program that came in? Were they not counting violations? Did he only start violating in the last two years? Is there anything in the record on that? So I believe it was in 2017-2018 when they started recording these violations, and that's when Mr. Harris – that's when the violations are on record. And Mr. Harris said that he had to violate these rules because he was dealing with health issues because the RMAP meal at the same time was decreasing its meat content and he was sick from just eating the RMAP diet alone, and so the canteen items that he was purchasing were the cheapest way of him satiating his hunger. But that wasn't happening before that? Canonically, I'm not sure. I don't know if the record tells anything about that. And so, Your Honor, because Mr. Harris is a devout Buddhist and he sincerely believes that the RMAP diet is a sincere component of his religious practice, he should be allowed, at the very least, to be temporarily put in the program while this litigation is pending and the merits of his claims are dealt with. For those reasons, I urge reversal. Thank you. All right. Thank you to both sides for your arguments in the case. The case is now submitted.
judges: Hamilton, NELSON, BUMATAY